(76 South. 182)

Nos. 22404, 22591.

CROW et al. v. BOARD OF SUP'RS OF ROAD DIST. No. 19, PARISH OF NATCHITOCHES et al.

(June 11, 1917.)

*(Syllabus by the Court.)*

1. LIMITATION OF ACTIONS ⬥⇒4(2)—PRESCRIPTION—POWER OF STATE.

The power of the state to limit the time within which legal rights, whether derived from Constitutions or elsewhere, may be asserted in her courts is as well recognized as the rights themselves, and a law which recognizes a right and requires that it be exercised within a reasonable time, and not throughout eternity is obnoxious to no constitutional objection.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 11.]

2. COUNTIES ⬥⇒151—ROAD DISTRICTS—ELECTIONS—LIMITATION.

The prescription, or peremption, of 60 days, declared by Act No. 256 of 1910, against attacks upon the legality of special elections held to obtain the views of the property owners upon the question of issuing bonds and levying taxes for the construction of roads is applicable to the case of an attack, based on Act No. 199 of 1916, upon a special election called by the police jury for bond, tax, and road purposes, where it appears that the call was issued three days before the approval of the act of 1916, and that the subsequent proceedings, including the election, return, and promulgation of the result thereof, and levy of the tax thereby authorized, were completed before the organization of the board of supervisors provided for by said act of 1916, and where it appears that the bonds, authorized by the election, were directed to be issued by both the police jury and the board of supervisors. But even if the prescription were inapplicable, the case was properly dismissed, since the election and other proceeding were legally conducted.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 166, 218.]

O'Niell, J., dissenting in part.

Appeal from Eleventh Judicial District Court, Parish of Natchitoches; W. T. Cunningham, Judge.

Action by H. F. Crow and others against the Board of Supervisors of Road District No. 19, Parish of Natchitoches, and another. From a judgment for defendants, plaintiffs appeal. Affirmed.

Smith & Rusca, of Natchitoches, for appellants. Scarborough & Carver and Breazeale & Breazeale, all of Natchitoches, for appellees. Howe, Fenner, Spencer & Cocke, of New Orleans, for Texas & P. Ry. Co., amici curiæ.

Statement of the Case.

MONROE, C. J. Plaintiffs herein H. F. Crow and E. S. Pharis, as citizens and taxpayers of "road district No 19 of the parish of Natchitoches," on January 15, 1917, brought the suit numbered, in this court, 22404, praying that a special election which had been held in that district, and subsequent action based thereon, be decreed illegal and that a sale of bonds and levy of taxes, purporting to have been thereby authorized, be prohibited by injunction; the cause of action alleged being that, on July 3, 1916, the police jury created the district No. 19, and, pro-

ceeding under the authority of Act 183 of 1914, called the election, to be held on August 22d, in order to obtain the views of the taxpayers upon a proposition to issue bonds to the amount of $250,000 and levy a tax for the building of a public road; that the election was held accordingly by officers named by the police jury, who made returns of the same, and that the police jury canvassed the returns and promulgated the result, declaring that the proposition had been carried, and thereafter, on September 5th, adopted an ordinance providing for the issuance and sale of the bonds, all of which was illegal, for the reason that, on July 6, 1916, the Governor had approved Act 199 of that year, which became effective on August 9th, and which so amended Act 183 of 1914 as to vest in a board of supervisors, thereby provided for, the power to discharge the functions which the police jury had thus assumed to discharge; that said board, "disregarding the same, but in accord with the provisions of said Act 199 of 1916, did, on January 5, 1917, meet * * * and adopt a resolution ordering and directing the sale of the said $250,-000 of * * * bonds, and did advertise for sealed bids, * * * as provided in said Act 199; all of which is * * * void, for the reasons set forth above."

Petitioners, therefore, pray that said board and the tax collector be cited, and for judgment as above stated.

There was judgment in the district court in favor of defendants, from which plaintiffs appealed. Thereafter, in April, plaintiffs brought the suit, numbered, in this court, 22591, merely for the purpose of setting up another ground in support of their demand, in the first suit, as follows, to wit:

"Your petitioners show that, in addition to reasons set forth in * * * that petition, heretofore filed, * * * they have discovered another cause and reason, showing the nullity of the election in road district No. 19. * * *

"Your petitioners show that the ordinance of the police jury * * * creating road district No. 19 was ultra vires, null, and void, for the reasons:

"(a) The police jury had already created road district No. 1, * * * the entire territory of which * * * was included * * * in the territory of road district No. 19; (b) that road district No. 1 was created * * * in 1914; a special election was held therein, and highway bonds in the amount of $10,000 * * * bearing 5 per cent. per annum, payable serially, were voted, and about $8,900, in principal, of said bonds are still outstanding * * *; (d) that the police jury is without authority in law to create two road districts, both of which have perpetual existence, both exercising, within the same territory, the same powers, jurisdiction, and privileges."

The trial court gave judgment, as it had done in the suit previously instituted, and plaintiff again appealed, and, by consent, the two suits have been consolidated in this court. They were submitted and decided in the court a qua upon agreed statements of fact, and have been so submitted in this court. Considered together, and somewhat condensed, those statements are substantially as follows:

It is admitted that the police jury created road district No. 1 in 1914, and by ordinance of July 3, 1916, created road district No. 19, and, as thus created, that it includes the territory embraced in district No. 1, contains a population of 15,305, and property assessed at $2,926,240, of which 200 persons and property assessed at $73,395 are in district No. 1; that district No. 19 was created as a public necessity in order to construct a highway 42 miles long, which necessarily includes 3½ miles of road extending through district No. 1, for the graveling of which that district had been created and a debt of $10,000 incurred by the issuance of bonds; but that the $8,900 of those bonds outstanding have been provided for by an appropriation from the proceeds of the tax levied on the property of district No. 19, and that it will require an additional sum of at least $20,000 to reconstruct and gravel said 3½ miles of road and a further sum of $3,000 to build a bridge thereon.

It is admitted that by its ordinance of

July 3d the police jury called the special election here in question, to be held August 22, 1916, for the consideration of the proposition to issue the bonds and levy the taxes therein referred to, and that said action was taken, the election held, the returns made and canvassed, and the result promulgated in strict accordance with the requirements of Act 256 of 1910, the result, as thus ascertained and promulgated, being that 304 ballots and $423,214 of property value were voted in favor of the proposition and 147 ballots and $100,218 against it; that on September 5, 1916, the police jury authorized the issuance of the bonds, which, as yet, do not appear to have been issued, and levied the tax of 8 mills, for the year 1916, for their payment, of which tax, at least 99 per cent., exceeding, $25,000, has been collected and deposited in the parish treasury, and that, prior to the complaint contained in plaintiff's first petition, filed January 15, 1917, no protest or objection had been made with respect to any of the steps thus taken.

It is admitted that Act 199 of 1916 was approved July 6th, and published on July 20, 1916; that the board of supervisors thereby provided for was not organized until January 5, 1917, upon which day it passed an ordinance reciting all the acts of the police jury, in the matter here involved, ratifying, affirming, and making them its own, declaring that the $250,000 of bonds should be issued, that the tax should be levied annually for their payment, and making other provisions with reference to the matter, such as the law requires.

It is admitted that, prior to the institution of this suit, the police jury and the board of supervisors, respectively, passed ordinances purporting to transfer, on the one part, and accept on the other, the control of the construction of the highway through road district No. 19, and that the board appropriated a sufficient amount from the proceeds of the tax levied under the ordinance of the police jury, as deposited in the parish treasury, to pay the outstanding bonds, amounting to $8,900, of road district No. 1, "plus the sum of $100 to the Whitney Central Bank, for expenses incurred * * * in obtaining the consent of the various holders of said bonds to surrender them." Both ordinances refer to the fact that the road for the building of which district No. 1 was created is but 3½ miles long, extending from Natchitoches to Grand Écore, and that it is necessary to include it in, and reconstruct it according to, the specifications of the state highway department, as part of the 42 miles of road to be built by district No. 19 in furtherance of the "Jefferson Highway," which is a national, or international, enterprise.

It is further admitted that the police jury and the board of supervisors have contracted obligations, amounting to about $2,500, in the preparation and perfection of plans and specifications preparatory to advertising for bids for the construction of public highways in the district, as provided by law.

Opinion.

In their first petition, plaintiffs attacked only the election and the proceedings immediately leading to and predicated thereon, the ground relied on being that Act 199 of 1916 had devested the police jury of its authority to call, supervise, return, and promulgate the result of the election, and vested that authority in the board of supervisors, and the prayer of the petition being "that the special election be declared illegal * * * and all proceedings by the police jury and by the board of supervisors of road district No. 19 concerning same be declared null and void and of no effect."

In their second petition, they allege that the creation of road district No. 19 was illegal, for the reason that there was includ-

ed therein the territory embraced in road district No. 1, already created, and against which a debt of $10,000 had been incurred, of which, $8,900 was still outstanding, which was ultra vires and illegal, the police jury being without authority to create two road districts, both of which have perpetual existence, and are to exercise the same powers within the same territory; and hence that all subsequent proceedings, based upon the creation of such districts, were illegal.

Defendants affirm the validity of all the proceedings of which plaintiffs complain, but plead, in bar of the action, the prescription of 60 days, as provided by section 17 of Act 256 of 1910.

[1] The first ground of attack concedes that the board of supervisors has the power to do over again all that has been done, and that it would be likely to do so may reasonably be inferred from the fact that it has, in effect, already committed itself to such action, by affirming and ratifying all that was done by the police jury, and itself finishing the work.

As to the second ground, it is nowhere suggested that plaintiffs are residents or taxpayers in road district No. 1, or that their interests could be affected, otherwise than favorably, by the inclusion of the territory embraced in that district in road district No. 19.

The purpose of the suit, and the effect, if plaintiff should obtain judgment, would seem therefore to be to take advantage of a supposed error committed by the police jury and the board of supervisors in an effort to interpret and apply certain statutes, and to annul proceedings taken by them, in good faith, and whereby, whilst plaintiffs remained silent, when they might have spoken, considerable expense was incurred and, at least, 99 per cent. of the tax involved for the year 1916 collected and paid into the parish treasury, from which we conclude that, if the prescription, or peremption, invoked by de-

fendants, is applicable to the case, we should rather hasten to apply it, unless there be some insuperable obstacle standing in the way.

Counsel for plaintiffs have not discussed that question in their brief, but other counsel, appearing as amici curiæ, assert that the law relied on does not furnish a bar to this action, and that, if it be so construed, it is unconstitutional, their argument being that:

"Section 17 of Act 256 of 1910 does not attempt, or purport, to limit the right of any person to institute suit, except in so far as the regularity, formality and observance of the election laws are concerned. It does not bar, or attempt to bar, the right to question the constitutional right of the police jury to create a road district, or its constitutional right to levy a tax, or the constitutional right of the tax collector to collect the tax. These are matters which the Legislature was not competent to take away from any person in interest. The fact that the Legislature, by said statute, undertook to deprive the governing authority of any subdivision of the right, on its own i. tiative, to raise the constitutional questions cannot, and will not, be construed to apply to the individual taxpayer or citizen, and it may even be seriously doubted, though it is not necessary for us to do so here, whether it was competent for the Legislature to go even to this extent, for it might be seriously questioned whether, if the law was unconstitutional, it imposed any duty upon any person whatsoever. * * * This suit strikes at the very fundamental right and power of the police jury: First, to create road district No. 19, in the circumstance and in the manner attempted; and, second, the right of the police jury to levy any tax in pursuance of the vote of the property taxpayers in said district, assuming, for the sake of the argument, that they had the power to create said district and to call a special election, as attempted."

What the Legislature has done, or attempted to do, is expressed in the section in question, as follows:

"Section 17. * * * That, for a period of sixty days from the date of the promulgation of the result of any such election, any person in interest shall have the right to contest * * * such election for any cause; after which time no one shall have any cause of action to contest the regularity, formality, or legality of said election for any cause whatever. If the validity of any election held under the provisions of this act is not raised within the sixty days herein prescribed, then no governing authority of any subdivision herein named, required to

levy a tax or issue bonds as authorized at an election or under this act, shall be permitted to refuse to perform that duty and urge, as an excuse or reason therefor, that some provision of the Constitution or law of Louisiana has not been complied with, but it shall be conclusively presumed that every legal requirement has been complied with, and no court shall have authority to inquire into such matters after the lapse of sixty days as herein provided."

The section thus quoted is to be construed with the other 34 sections of the act of which it forms part, and, thus construed, is confined in its application to the elections provided for in those other sections; that is to say, special elections called by the governing authority of a political subdivision, as created or defined by them, and, in the name and for the purposes of which such elections are authorized. Section 1 of the act declares "parishes, wards, cities, towns, villages, school districts, road districts, drainage districts and subdrainage districts" to be political subdivisions, and that the police jury shall be the governing authority of the parish and of the wards and road districts within the parish and section 2 declares that the "police jury, acting for the parish, a ward or road district therein * * * shall have authority to call a special election," such as that here in question. If, therefore, a case were presented in which it appeared that an ordinary citizen had assumed to call a special election in an established parish, ward, or road district, and to issue bonds in the name of, and levy a tax upon the property in, such district, it is clear that section 17 would be inapplicable to a suit contesting such proceedings; and the same would be true if a police jury were to assume to call a special election in a parish, ward, or road district which had never been created. But where a body, vested with such authority, has assumed to create a political subdivision, such as the act defines, and a body, vested with such authority, has assumed to call a special election, canvass the returns, promulgate the result, and issue the bonds, as contemplated

141 LA.—33

by the act, section 17 is applicable to any suit the purpose of which is to defeat the end intended to be accomplished; for it not only limits to 60 days the period within which, in such case, a suit may be brought, to contest, for any cause, "the regularity, formality, or legality of said election," but it further declares that, "if the validity of any election, held under provisions of this act, is not raised" within that period, the bonds and the tax thereby authorized shall be issued and levied, and that the governing authorities charged with those functions shall not be permitted to refuse to perform them on the ground that some provision of the law or the Constitution has not been complied with. In other words, the lawmaker has provided a method by which certain public works may be constructed, through the taxation of property which is to be particularly benefited thereby, and in so doing has recognized the right of the owners of such property to raise all the legal and constitutional objections that they think proper, but it has, in that connection, declared that the right so recognized must be exercised in time, and not throughout eternity; and the power of the state to limit the time within which rights, whether derived from Constitutions or elsewhere, are to be asserted, in her courts is as well recognized as the rights themselves. Considering, from that point of view, the argument of the amici curiæ, we find that police juries are authorized by the Constitution (Con. 1898, art. 291; Con. of 1913, art. 292) "to form their respective parishes into road districts," and that on July 3, 1916, the police jury of the parish of Natchitoches formed road district No. 19 in that parish. We find nothing in either the Constitution or the law, or in such reason as we are able to command, to warrant the assumption that road districts, when once created, become immutable and perpetual, and we conclude that, as they are created originally for the convenience and

advantage of the public, they may be changed by the creative authority, whenever that convenience and advantage will thereby be best subserved. It is true that in making such changes, thus including the territory of one district, already created, within the jurisdiction of another, the property in such territory cannot lawfully be subjected to double taxation, in excess of a constitutional limitation, but in this case, as we take it, the included district ceases to exist by reason of its merger in the other, and no rights acquired under contracts are asserted, it being admitted that the outstanding debt of district No. 1 has been provided for, with the consent of the creditors, from the proceeds of the single tax levied upon district No. 19. We find, also, that on July 3, 1916, the police jury was the governing authority of road district No. 19, with power, under Acts 256 of 1910 and 183 of 1914, to call special elections for road purposes, and that it called such an election, to be held on August 22d, appointed the commissioners, clerks, etc., and that the election was held, the returns canvassed, the result promulgated, the bonds authorized, and the taxes levied and collected (for the year 1916), all prior to the institution, by plaintiffs, on January 15, 1917, of their first suit. It is admitted that "all proceedings had and all ordinances and acts of the police jury were regular, lawful, and perfected by publication," which apparently admits the plaintiffs out of court; but, conceding that the question of the operation of Act 199 of 1916 is left for decision, it is indisputable, and undisputed, that when on July 3d the election was ordered, the police jury alone had the power to order it, and that, though Act 199 was approved on July 6th and promulgated on August 9th, and in that sense went into effect upon the date last mentioned, the board of supervisors, for which it provides, was not organized until January 3, 1917, several months after the proceedings of the police jury here complain-

ed of had become accomplished facts. Even, therefore, if it were conceded that, when Act 199 went into effect, it transferred all of the authority, with respect to road districts, previously vested in the police juries, to the board of supervisors, it may very well be questioned whether such transfer could have become effective until that board came into existence, and we know of no means whereby a board, to be composed of persons who may or may not be in existence, may or may not be qualified to accept membership, may or may not accept membership, though qualified, can come into existence save by organization.

[2] Beyond that, the Act of 1916 contains no suggestion that its provisions were intended to operate retrospectively and to authorize the board of supervisors to call an election which had been called, by competent authority, before the act became a law and six months before the board was organized, or even to authorize that board to supervise, make return, and promulgate the result of, and levy taxes voted at, elections to be thereafter called by it. For authority in all those matters, we are referred by the act itself, to Act 256 of 1910. The act in question (of 1916) is entitled

"An act to amend and re-enact sections 2, 3, 4, 5, 6, 8, and 11 of Act No. 183 of * * * 1914, entitled 'An act' [then follows the title of Act 183 of 1914]."

Section 1 contains the amendment and re-enactment of section 2 of the Act of 1914, section 2, the amendment and re-enactment of section 3 of the Act of 1914, and so on. Section 1 declares that the governing authority of road districts shall be "a board of supervisors, selected as hereinafter set out," and constitutes such board a corporation with power to construct roads and bridges and to acquire property for that purpose. Section 2 provides for the composition of the board and the qualifications required of its members and declares that:

"The said supervising board shall have power and authority after a road bond or tax is voted, to provide the specifications under the terms of this act for road construction, to call for bids, to lay out and determine the course of roads to be built, let the contract for road construction, and supervise the construction of the roads in said districts."

Section 3, deals with the offices of president and secretary treasurer. Section 4 declares:

"That in order to carry out the provisions of this act relative to the proper administration of the affairs of said road and subroad districts, the board of supervisors, as the governing authority of said district, shall call elections, in accordance with the terms and conditions of Act 256 of * * * 1910 and the amendments thereto, or any subsequent acts * * * supplanting or amending same."

And it confers upon the board of supervisors authority "to issue bonds, in accordance with the terms and provisions of the Constitution and laws of Louisiana now in force or that may be hereafter enacted to provide the means for the construction of public roads," and contains various provisions in regard to the bonds and the manner in which they are to be disposed of. Section 5 deals with the letting of contracts for road building and the doing of such work by the board itself. Section 6 provides that, when a road, or subroad district has been established and a road has been built by the levy of a special tax, "to the limit provided by this act," the property of the district shall not be subjected to any other road tax unless a majority of the taxpayers in number and amount, vote for it, and that, after a road or bridge has been built, it shall be maintained by the police jury. Section 7 contains provisions relating to the meetings and minutes of the board and the reimbursement of expenses incurred by its members. There is no repealing clause.

Section 5 of the act of 1914, superseded by section 4 of the act of 1916, conferred upon the police jury the power to "call elections, in accordance with the terms and conditions of Act 256 of 1910 and the amendments thereto, or any subsequent acts * * * supplanting or amending the same," and "to issue bonds, in accordance with the terms and provisions of the Constitution and laws of Louisiana, now in force, or that may hereafter be enacted, to provide means for the construction of the public roads," etc.; and there are other provisions which vested in the police jury the power to construct the roads by contract, or otherwise, which provisions have also been superseded. Section 9 has, however, not been superseded by the act of 1916, and it declares:

"That the special taxes imposed for the purpose of providing for the principal and interest on the bonds of any road district shall each year be levied by the police jury."

No special provision is found in the act for the supervision and return of the election or the promulgation of the result.

Turning then, to the act of 1910, to which we are referred by both of the acts above mentioned as an authority upon the subject of elections, we find that it authorizes the police jury, as the governing authority of road districts, to call, or order, special elections for road purposes, and to appoint commissioners and clerks therefor; to open the boxes, count the ballots, canvass the returns, and promulgate the results, section 15 declaring that those functions shall be discharged by "the authorities under whose orders such election has been held," and that "the authority ordering the election shall keep a procès verbal," etc. Section 19 provides:

"That, in the event that any election ordered and held as aforesaid shall result in favor of the proposition to levy and assess special taxes, * * * the police jury for the parish, ward or road district, and the governing authority of any other subdivision named herein shall. * * * levy and assess the said special taxes."

Our conclusions, then, are that there is nothing in this case to prevent the application to it of the prescription, or peremption,

declared by section 17 of Act 256 of 1910, and that, even though it were otherwise, the suit has been properly dismissed, for the reason that, in calling and supervising the election here attacked, canvassing the returns, promulgating the result, and levying the tax thereby authorized, the police jury *acted within the authority vested in it by law*, and that whether it, or the board of supervisors, was the proper authority, under the circumstances, to direct the issue of the bonds is immaterial, in view of the .fact that such direction was given by both.

The judgments appealed from are therefore

Affirmed.

O'NIELL, J., concurs in the decree, but not in the opinion that the Legislature can, by a statute of limitation or statute of repose, limit the right of any one to question the constitutionality of a statute.